UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 14-095-M |
| ) | |
| EMMETT BLYDEN ) | |

## MEMORANDUM AND ORDER

Emmett Blyden has moved to suppress certain statements made at or shortly after his arrest on June 6, 2014. (ECF 16). An evidentiary hearing was held on April 2, 2015, and, in addition to the testimony of ATF agent Edward Troiano, the government introduced a transcript of the recorded dialogue in which agent Troiano and Mr. Blyden engaged. Mr. Blyden contends that the statements resulted from a violation of *Miranda v. Arizona*, 384 U.S. 536 (1966), and therefore should be excluded from evidence.

The Court excludes Mr. Blyden's statements for the reasons below.

## Background

The parties agree that on June 6, 2014, Mr. Blyden was arrested and placed in the back seat of a police cruiser, and it is not contested that this constituted custody for purposes of *Miranda*. Agent Troiano introduced himself, informed Mr. Blyden why he was being arrested, and, after a short dialogue discussed below, read him *Miranda* warnings from a card. Mr. Blyden then made lengthy statements.

1

There are two groups of statements: those made prior to the giving of *Miranda* warnings and those made after. The Court precludes their introduction into evidence for different reasons.

**<u>Pre-Warnings Statements and Rule 403</u>**

The first set of statements consists of Mr. Blyden's saying (1) "Yes, sir" when confronted by agent Troiano with the accusation that he "came tonight to do a home invasion," and (2) "Listen, listen, I don't, I don't know the story. These g-, these ... I was at work. You caught me ..." when advised by agent Troiano to "be truthful" and "tell [him] what the explanation [is]" for why he (Blyden) had shown up at the scene. It was at this point that agent Troiano interrupted and gave Mr. Blyden *Miranda* warnings. Government's Exhibit 2(A) at p. 1-2.

The government asserts that these pre-warning statements were not incriminatory. (ECF 30).[1] The Court believes that even though experienced professionals – the government's attorney and agent Troiano himself[2] interpret these words as non-incriminatory, a lay jury might reasonably respond to them differently and believe they offer something probative demonstrating Mr. Blyden's guilt. If that conclusion were drawn, the statements would be highly prejudicial to Mr. Blyden.

On the other hand, as statements that are likely non-incriminatory – and, at most ambiguous – they offer little in the way of relevant evidence. *United States v. Tavares,* 21 F.3d

---

[1] "Most of the supposedly offending statements indicate only that Defendant heard and understood what was being said to him. The primary – supposedly – offending statement, "You caught me...[,]" is a mere utterance that did not mature into a statement. Before Defendant could complete the thought, the agent interrupted, stopped Defendant, and issued a *Miranda* warning. In context, this statement is not an admission of guilt. The incriminating statements come after the *Miranda* warning, not before, and accordingly there is no basis for suppression." Government's Reply in Opposition to Defendant's Motion to Suppress. (ECF 30 at p. 1).

[2] Agent Troiano termed the "You caught me" words the "beginning" of a statement that "might be incriminating" ("actually stopped him when I thought he was beginning to say something that might be incriminating.")

2

1, 4 (1st Cir. 1994) ("[r]elevant evidence ... means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"), quoting Fed.R.Evid. 401. An inference of guilt from ambiguous statements such as those at issue is a weak one, having little weight to make a material fact more or less probable.

Rule 403 confers wide discretion upon a trial judge to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, ..." *United States v. Abel,* 469 U.S. 45, 54 (1984) (weighing of relevance against other factors is a matter for the district court's "sound judgment"). In this case, the Court finds that the marginal relevance of these statements is outweighed both by the possibility of undue prejudice should the jury interpret them as incriminating and by the potential for jury confusion as to what the words signified. Therefore, the pre-*Miranda* warnings statements are excluded from evidence.

**Post-Warnings Statements and Waiver**

*Miranda* warnings are a procedural "safeguard[] effective to secure the privilege against self-incrimination." *Miranda v. Arizona, supra* at 444. They serve first to ensure that a person subjected to custodial interrogation understands that he has a privilege granted by the Fifth Amendment to the United States Constitution to remain silent. *Id.* The warnings complement the privilege itself, by underscoring that the decision to relinquish the privilege must be knowing, intelligent and voluntary. *Id.*

Waiver may be inferred from the circumstances surrounding the giving of a statement. *Berguis v. Thompkins,* 560 U.S. 370, 384 (2010) (waiver of *Miranda* rights need not be express). A critical component, however, is that the government demonstrate the warning was understood

3

by the accused. "If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights. ... The prosecution must make the additional showing that the accused understood these rights." *Id.* at 384 (citations omitted). *See, Johnson v. Zerbst,* 304 U.S. 458, 464 (1938) (waiver is an "intentional relinquishment or abandonment of a known right or privilege"), cited in *Berguis, supra.*

In the instant case, there are insufficient indicators that Mr. Blyden understood the rights whose meaning the *Miranda* warnings are intended to convey. The defendant in *Berguis* was given a written form listing his rights, was shown to have the ability to read and understand English, was given ample time to read the warnings, and was required to read some of the form out loud.[3] Here, the agent read the warnings and put a copy of the form on Mr. Blyden's lap, but Mr. Blyden was handcuffed behind his back and could not therefore handle the form himself. (ECF 28 at p. 24).

At one point partway through the warnings, Agent Troiano asked, "You understand that?" and then said, "Okay." The agent forthrightly acknowledged in his testimony that interspersing "Okay" (at two points) was a habit of speech and did not signify any substantive content. (*Id.* at p. 32). He testified that Mr. Blyden "would nod" at those points, but this gesture must be evaluated in light of the agent's characterization of Mr. Blyden's saying "Yes, sir" earlier in the interview as simply a recognition that he was being spoken to. For example, when Agent Troiano introduced himself, Mr. Blyden responded, "Yes, sir." *Id.* at p. 19.

---

[3] *Berghuis* was a habeas corpus proceeding, in which the Sixth Circuit Court of Appeals had rejected the consistent findings and conclusions of the Michigan state courts. *Id.* at 374. Suppression under those circumstances is warranted only on a finding that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." *Berguis, supra* at 378, quoting 28 U.S.C. §2254(d)(1). This Court reviews the evidence in the first instance.

4

The First Circuit has cautioned that "[m]erely asking the accused whether he understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. *Miranda* requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them." *United States v. Porter*, 764 F.2d 1, 7 (1st Cir. 1985). *Accord, United States v. Gonzalez*, 719 F.Supp.2d 167, 172 (D.Mass. 2010), discussing *Berguis v. Thompkins, supra.*

Finally, this interrogation was carried out in circumstances that do not provide an assurance that Mr. Blyden's choice to relinquish his privilege was the product of deliberate intention. Events were happening very quickly. He had suffered a "flashbang" (apparently tantamount to a grenade going off) in an apartment just moments before that caused him to fall backwards off his chair, feet over head, and roll across the floor into "something standing up which fell upon him." (ECF 28 at p. 21-22. He was then arrested and placed in the back of the cruiser. Agent Troiano testified he was standing outside the cruiser, and he acknowledged the flashbang could impair hearing, although he said Mr. Blyden did not seem "stunned" to him. *Id.* at p. 22. The warnings were immediately followed by Agent Troiano's declaration, "[T]ell me, if you want, you can continue to tell me what you were talking about" and Mr. Blyden's substantive response. Government's Exhibit 2A, at p. 3. There was no intervening conversation or circumstances from which this Court can infer a deliberate, intentional relinquishment of a known right.

It is the government's burden, and a heavy one at that, to demonstrate waiver. *United States v. Montgomery*, 714 F.2d 201, 203 (1st Cir. 1983). On this record, that demonstration is insufficient.

5

The Court therefore Orders that the post-warning statements made by Mr. Blyden be suppressed from evidence.

IT IS SO ORDERED:

*/s/ John J. McConnell, Jr.*
John J. McConnell, Jr.
United States District Judge

Date: May 7, 2015